Hart, J.
 

 Marietta complains that the valuation of the rate base in this case is excessive, unjust and unlawful ; that the exclusive use by the commission of the reproduction-cost-new-less-depreciation method in_ arriving at such valuation is unjust and unlawful; and that the allowance by the commission of a 6.5-per-cent rate of return on the rate base so found is also unjust and unlawful. The real basis of Marietta’s complaint seems to be that the commission in its finding failed to give due consideration and especial weight to the purchase price for which River obtained the property in question.
 

 Marietta makes no substantial complaint as to the finding of the commission on other items which influenced the total cost to the consumer. ' Such other items included production expense, cost of gas purchased, transmission and administrative expense, federal and state taxes, and depletion of wells and other property.
 

 Marietta does not specifically claim that the purchase price of $82,527.23 represents the true value of the property. In fact, counsel for Marietta in their brief, in answer to the claim of the commission that the purchase price does not represent the fair value of the. property, say: “Time, possibly, is the answer; but that extra value has already once been paid for by gas consumers somewhere * * *.”
 

 
 *178
 
 The significance of the purchase price as between seller and purchaser in this case loses much of its importance when it is remembered that the stock of both, as subsidiaries, was wholly owned by their parent holding company, The Consolidated Natural Gas Company. The transaction as between the subsidiaries simply meant the transfer of the purchase price from one pocket to another of the holding company which continued to own all the stock of both subsidiaries.
 

 Counsel for Marietta in oral argument declined to suggest any method which the court might direct the commission to use in determining the valuation of the property in question.
 

 The commission admittedly used the reproduction-cost-new-less-depreciation method in determining the value of River’s property as a part of the rate base. Can this court say that in so doing the commission arrived at an unreasonable valuation of River’s property or an unreasonable rate of return on such valuation and as a consequence fixed an unreasonable domestic gas rate for the city of Marietta?
 

 The fair value of public utility, property used and useful in Ohio is to be determined under Sections 499-8, 499-9 and. 499-13, General Code.
 

 Section 499-9, General Code, reads in part as follows :
 

 “In ascertaining the value of the various kinds and classes of property of each public utility or railroad, the commission shall have authority to ascertain and report in such detail as it may deem necessary as to each piece of property owned or used by such public utility or railroad to show separately the following facts: * * *
 

 “D. The cost of new production as of a date certain, of all physical property other than land, owned and used by such public utility or railroad, showing the values of the separate items comprising such property, together with the unit basiá of such valuation.
 

 
 *179
 
 “E. Depreciation, if any, from the new reproductive cost as of a date certain, for existing mechanical deterioration, for age, for obsolescence, for lack of utility or for any other cause,' the percentage and amount of each class of depreciation, if any, to be specifically set forth in detail.
 

 “F. The net value as of a date certain, of all physical property other than land owned by such utility or railroad, to be derived by deducting the sum of the amounts of depreciation from the sum of the new reproductive costs. * * *
 

 “Such investigations and report shall show separately the property used and useful to such utility or railroad in the furnishing of the service to the public, and the property held by such utility or railroad for other purposes, and such other items concerning values and methods of making valuations as the commission may deem properwhich, said inventories and reports shall be filed in the office of the commission for the information of the Governor and the General Assembly.”
 

 The pertinent part of Section 499-13, General Code, reads as follows:
 

 “Whenever the authority is conferred or the obligation imposed by law upon the commission
 
 to ascertain the value of any public utility or railroad, such valuation under such authority or obligation shall be made in accordance ivith the provisions of this act
 
 [Sections 487 to 499-18 and 543 to 551-6, General Code].” (Italics ours.)
 

 On several occasions this court has held that the General Assembly in delegating rate-making power to the Public Utilities Commission has limited the commission in the valuation of physical property,' other than land, for rate-making .purposes, to reproduction cost as of a date certain less observed depreciation.
 
 *180
 

 Lima Telephone & Telegraph Co.
 
 v.
 
 Public Utilities
 
 Commission, 98 Ohio St., 110, 120 N. E., 330;
 
 Columbus Gas & Fuel Co.
 
 v.
 
 Public Utilities Commission, 127
 
 Ohio St., 109, 187 N. E., 7;
 
 East Ohio Gas Co.
 
 v.
 
 Public Utilities Commission,
 
 133 Ohio St., 212, 12 N. E. (2d), 765.
 

 In the ease of
 
 Lima Telephone & Telegraph Co.
 
 v.
 
 Public Utilities Commission, supra,
 
 this court held:
 

 “2.
 
 Section 499-8
 
 et seq.,
 
 General Code, prescribe the steps to be taken by the Public Utilities Commission in the valuation of the property of a public utility for the purpose of determining the justice of rates or fixing the same.”
 

 In the case of
 
 Lindsey
 
 v.
 
 Public Utilities Commission,
 
 111 Ohio St., 6, 144 N. E., 729, this court held:
 

 “1. Where the Public Utilities Commission of Ohio in any hearing before it has the question whether a rate, fare,.charge, toll, or rental will yield a reasonable return upon the value of the property of a public utility used and useful for the convenience of the public, it is required, under Sections 499-9 and 499-13, General Code, to ascertain and report value, classified as in the various alphabetical subdivisions of Section 499-9, General Code.”
 

 In the course of his opinion in that case, Judge Robinson said:
 

 “Section 499-9, General Code, is a part of ‘this act,’ and since valuation by the commission is by Section 499-13 mandatorily required to be made in accordance with the'provisions of ‘this act,’ and the whole act necessarily includes all of its parts, if the various parts of the act can be reconciled so as to give force and effect to Section 499-9, as well as to the other provisions of the act, it becomes necessary for the court to give effect to that section.”
 

 In the case of
 
 East Ohio Gas Co.
 
 v.
 
 Public Utilities Commission, supra,
 
 this court held:
 

 
 *181
 
 “1. The provisions of Section 499-9, General Code, require that property, other than land, of a public utility be valued by deducting ‘the sum of the amounts of depreciation from the sum of the new reproductive costs ’ as of the date of the investigation. * * * ’ ’
 

 In the course of his opinion in that case, Judge Gorman said:
 

 “Under the .provisions of Section 499-9, General Code, in rate-making cases, in determining valuations the Public Utilities Commission of Ohio is directed to base such determination upon,, the reproduction cost new less depreciation. While under the provisions of Section 499-10, General Code, consideration may be given to outstanding bonds, original capital stock, moneys received from the issue of securities and receipts and expenditures, the Legislature has rather specifically set forth rules for valuations to be followed by both the commission and this court. Under the statutes in Ohio, relevant argument cannot be received that valuations should be based upon money prudently invested (see Brandies, J., in
 
 Missouri
 
 v.
 
 Southwestern Bell Telephone Co.,
 
 262 U. S., 276, 289, 67 L. Ed., 981, 985, 43 S. Ct., 544, 547) because the Legislature has adopted the principle of the rule set out in
 
 Smyth
 
 v.
 
 Ames,
 
 169 U. S., 466, 42 L. Ed., 819, 18 S. Ct., 418.”
 

 In the case of
 
 Columbus Gas & Fuel Co.
 
 v.
 
 Public Utilities Commission, supra,
 
 this court held:
 

 “6. The General Assembly of the state of Ohio having provided a legislative formula for the Public Utilities Commission of Ohio, in ascertaining the value of the property of a public utility for the purpose of fixing a rate-base, such formula must be followed by the Public Utilities Commission, and a departure therefrom constitutes error.”
 

 That case was reversed by the Supreme Court of the
 
 *182
 
 United States (292 U. S., 398, 78 L. Ed., 1327, 54 S. Ct., 763), not because of the formula used in determining the value of the utility’s property used and useful in serving the city of Columbus but because, among other things, this court refused to permit the inclusion of a depletion allowance in the operation of the utility’s gas fields, and the concomitant depreciation of the wells and their equipment, in the appellant's Operating expense, thus confining the utility to a rate of 6% per cent on its wasting assets. The Supreme Court of the United States held this to be confiscatory and unlawful.
 

 Counsel for Marietta claim the foregoing cases are no authority for the procedure adopted in this case for the reason that the issues in those cases relate to claims of confiscation on the part of the utility because of the use of such formula in the valuation of utility property. But if a method had been adopted by the, commission in the instant case, which gave the property of River a valuation of less than the cost of reproduction new less depreciation, this court would undoubtedly be confronted with a claim on the part of River that failure to follow the cost-new-less-depreciation method constituted a confiscation of its property —the identical claim which was before the courts in the cases above noted.
 

 For a number of years after the public utilities act was adopted by the General Assembly, the municipalities generally acquiesced in the interpretation given to the act by this court, to the effect that the act provides for valuation of utility property by the reproduction-cost-new-less-depreciation method, and the utilities then challenged such interpretation in numerbus cases. Now, due to higher cost prices, the municipalities are disposed to challenge this method of valuation. If the original interpretation was sound, it still remains so, even though economic conditions have changed in'the
 
 *183
 
 meantime. If the statute has become outmoded, the remedy must be attained through the legislative branch of the government and not in the courts-.
 

 As a matter of fact, in the absence of legislative requirement, there is much authority to the effect that the reproduction cost new less depreciation is the preferable method to be used in the determination of the fair value of the property of public utilities for rate-making purposes. On the other hand, in determining true value, the courts are not limited to the consideration of the actual investment in the property. The recent case
 
 of City of Richmond
 
 v.
 
 Henrico County,
 
 185 Va., 176, 37 S. E. (2d), 873, is in point,, citing authorities.
 

 While Marietta complains that the commission used only the reproduction-cost-new-less-depreciation method for determining the value of River’s property, which Marietta claims was too high, yet the record fails to disclose any substantial evidence to support any other basis for a determination of fair value. Furthermore, there is no evidence in the record questioning the correctness of the inventory or suggesting items improperly included therein, the pricing of the inventory or the depreciation thereon, all of which was mutually arrived at by the engineers of the commission, Marietta and River. Likewise, there is no substantial evidence in the record to refute the correctness-of the finding of the commission as to the other items making up the production and distribution costs of gas furnished in Marietta, such as production expense, gas purchased, transmission system expense, administrative and general expense, federal and state taxes, depletion of gas wells, leaseholds and annual depreciation of other property.
 

 The rate of return allowed by the commission, 6% per cent, has been generally the allowance sustained in
 
 *184
 
 many similar cases. See
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 56 P. U. R. (N. S.), 73, 91, 92;
 
 Columbus Gas & Fuel Co.
 
 v.
 
 City of Columbus,
 
 32 P. U. R. (N. S.), 321;
 
 East Ohio Gas Co.
 
 v.
 
 City of Cleveland,
 
 27 P. U. R. (N. S.), 387;
 
 East Ohio Gas Co.
 
 v.
 
 Public Utilities Commission,
 
 137 Ohio St., 225, 28 N. E. (2d), 599;
 
 East Ohio Gas Co.
 
 v.
 
 Public Utilities Commission, supra.
 

 ' One of the most insistent claims of Marietta is that' the commission should have recognized the price which Biver paid for this property, namely $82,527.23, as a fair value of the property and not the reproduction cost new less depreciation, for the reason that the extra value has already once been paid for by gas consumers somewhere in previous depreciation reserves; and that no law requires consumers to pay twice or permits investors to collect twice. The answer to this claim is that these excessive depreciation reserves were taken before Biver became the owner of the property and Biver cannot now be penalized for this practice by its predecessors in title. Its property must be valued as of a date certain and cannot be reduced so as to require a confiscatory present rate of return.
 

 The Supreme Court of the United States has spoken on this subject in the case of
 
 Board of Public Utility Commrs.
 
 v.
 
 New York Telephone Co.,
 
 271 U. S., 23, 31, 32, 70 L. Ed., 808, 46 S. Ct., 363, wherein a claim was made similar to that now made by Marietta. The court said:
 

 “The just compensation safeguarded to the utility by the Fourteenth Amendment is a reasonable return on the value of the property used at the tirqe that it is being used for the public service. And rates not sufficient to yield that return are confiscatory.
 
 Willcox
 
 v.
 
 Consolidated Gas Co.,
 
 212 U. S., 19, 41;
 
 Bluefield Co.
 
 v.
 
 Public Service Commission,
 
 262 U. S., 679, 692. Constitutional protection against confiscation does not de
 
 *185
 
 pend on the source of the money used to purchase the property. It is enough that it is used to render the service.
 
 San Joaquin Co.
 
 v.
 
 Stanislaus County,
 
 233 U. S., 454, 459;
 
 Gas Light Co.
 
 v.
 
 Cedar Rapids,
 
 144 Iowa, 426, 434, affirmed, 223 U. S., 655;
 
 Consolidated Gas Co.
 
 v.
 
 New York,
 
 157 F., 849, 858, affirmed, 212 U. S., 19;
 
 Ames
 
 v.
 
 Union Pacific Railway Co.,
 
 64 F., 165, 176. * * * Past losses cannot be used to enhance the value of the property or to support a claim that rates for the future are confiscatory.
 
 Galveston Electric Co.
 
 v.
 
 Galveston,
 
 258 U. S., 388, 395;
 
 Georgia Ry.
 
 v.
 
 R.
 
 R.
 
 Comm.,
 
 262 U. S., 625, 632.
 
 And the 'law does not require the company ‘to give up fo/the benefit of future subscribers any part of its accumulations from past operations. Profits of the past cannot be used to sustain confiscatory rates for the future. Newton v. Consolidated Gas Co.,
 
 258 U. S., 165, 175;
 
 Galveston Electric Co. v. Galveston, supra,
 
 396;
 
 Monroe Gaslight & Fuel Co.
 
 v.
 
 Michigan Public Utilities Commission,
 
 292. F., 139, 147;
 
 City of Minneapolis
 
 v.
 
 Rand,
 
 285 F., 818,, 823;
 
 Georgia Ry. & Power Co.
 
 v.
 
 Railroad Commission,
 
 278 F., 242, 247, affirmed 262 U. S., 625;
 
 Chicago Rys. Co.
 
 v.
 
 Illinois Commerce Commission,
 
 277 F., 970, 980;
 
 Garden City
 
 v.
 
 Telephone Company,
 
 236 F., 693, 696.” .(Italics ours.) See, also,
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 113 Ohio St., 259, 148 N. E., 817.
 

 Even if the provisions of Section 499-9, General Code, as to valuation of utility property, are not mandatory, they are at least permissive and what the commission is permitted to do under the law cannot be held to be unlawful and unreasonable, unless the commission has committed some error or made some mistake in its procedure.
 

 The commission found the reproduction value of River’s distribution property in Marietta to be $494,-078 and the depreciation on the same to be $89,432, leaving a present net value of $404,646.
 

 
 *186
 
 The commission found also that the city gate cost of gas sold in Marietta in one year was $329,649.02; and that the quantity of gas so sold in M c.f. was 765,202, or a total gate cost of 43.08 cents per M c.f. The city distribution cost of the gas so sold, including distribution-system expense, accounting -and collections, administrative and general expense, federal and state taxes and annual depreciation of property, and a return of 6% per cent on the value of the property ($404,646), amounting to $26,301.96, made a total distribution cost in the city of Marietta of $108,169.36. Adding the city gate cost of $329,649.02 and the distribution cost of $108,169.36 made a total net cost of all gas sold in Marietta of $437,818.38 which, divided by the M c.f.'sold, 765,202, made the rate of 57.2 cents per M c.f.
 

 The commission, however, revised this rate downward by five cents per M c.f., making the final over-all rate 52.2 cents per M c.f. and reducing River’s income to cover the cost of the gas by the sum of $38,250. The •effect of this reduction was either to allow River a 6% per cent return on less than the full rate base found or to allow it less than 6% per cent return on the full rate base so found. To this extent, the commission reduced the rate base or the rate of return, or both. This reduction amounted to approximately one and one-half times the amount allowed for return on the valuation of River’s property. After all, the valuation •of River’s property in Marietta and the return allowed to it thereon are minor items in the gas rate to the •consumers of Marietta. The cost item of $26,301.96 in a total cost of $437,818.38 is approximately
 
 3%
 
 cents per M c.f. and less than the reduction which the commission made in the over-all rate.
 

 This is not an appeal under Section 614-44
 
 et seq.,
 
 •General Code, from an ordinance of a municipality
 
 *187
 
 fixing rates where the utility has the burden of proof, but a proceeding under Section 614-20, General Code, requiring the commission to determine the justness and reasonableness of a rate. Here, the rate was determined by the commission and accepted by the company. Under such proceeding and circumstances the burden of showing any error or mistake on the part of the commission rests upon the municipality attacking the findings of the commission.
 

 It is a well-settled rule that a court will not substitute its judgment as to the value of public utility property or as to the cost of production and distribution of public utility service for the finding of the commission on these matters and will not reverse the order of the commission thereon unless there is a clear showing that it has abused its discretion or has omitted to give just consideration to. some element in the determination of the rate-base structure or the rate of return which makes its finding unlawful and unreasonable. As was said by the Supreme Court of the United States, in the case of
 
 Federal Power Commission
 
 v.
 
 Hope Natural Gas Co.,
 
 320 U. S., 591, 602, 88 L. Ed., 333, 64 S. Ct., 281:
 

 “It is not theory but the impact of the rate order' which counts. If the total effect of the rate order cannot be said to he unjust and unreasonable, judicial inquiry under the act is at an end. The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the commission’s order does not become suspect by reason of the fact that it is challenged. It is the -product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the act carries the heavy burden of making a convincing-showing that it is invalid because it is unjust and unreasonable in its consequences.
 
 Cf. Railroad Commis
 
 
 *188
 

 sion
 
 v.
 
 Cumberland Tel. & T. Co.,
 
 212 U. S., 414;
 
 Lindheimer v
 
 .
 
 Illinois Bell Tel. Co., supra
 
 [292 U. S., 151] 164, 169;
 
 Railroad Commission
 
 v.
 
 Pacific Gas & Electric Co.,
 
 302 U. S., 388, 401.” See, also,
 
 Lima Telephone & Telegraph Co.
 
 v.
 
 Public Utilities Commission, supra.
 

 The rate order of the commission in this case not being unlawful or unreasonable is hereby affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Turner, Matthias, Zimmerman and Sohngen, JJ., concur.
 

 Stewart, J., concurs in paragraphs two, three and four of the syllabus and in the judgment.