Per Curiam.

In a proceeding of this kind, the statutes of this state and the decisions of this court indicate that the Public Utilities Commission must do the following:
1. Determine the dollar amount as of a date certain of the reconstruction cost new less existing depreciation of the property of the public utility used and useful in rendering the public utility service for which rates are to be fixed. This amount represents and will be referred to herein as the statutory rate base. See Sections 4909.04, 4909.05 and 4909.15, Revised Code; City of Marietta v. Public Utilities Commission, 148 Ohio St., 173, 74 N. E. (2d), 74; East Ohio Gas Co. v. Public Utilities Commission, 133 Ohio St., 212, 12 N. E. (2d), 765; Lindsey v. Public Utilities Commission, 111 Ohio St., 6, 144 N. E., 729; and Lima Telephone & Telegraph Co. v. Public Utilities Commission, 98 Ohio St., 110, 120 N. E., 330.
2. Determine what percentage will represent a fair annual rate of return (paragraph two of syllabus of City of Marietta v. Public Utilities Commission, supra) on the property so used and useful in rendering such public utility service, and will thereby represent a yearly “reasonable compensation for the service rendered.” (See Section 4909.15, Revised Code.) This percentage will be referred to herein as the rate of return.
3. Determine the dollar annual return to which the utility is entitled by applying the rate of return percentage against the dollar amount of the statutory rate base. This dollar annual return will be referred to as the dollar amount of return.
4. Determine the dollar amount of the cost of rendering the public ■ utility service for a particular year. This dollar amount will be referred to herein as the annual expenses.
5. Add the dollar amount of return (paragraph number 3) to the annual expenses (paragraph number 4). The resulting *444 figure will be referred to herein as the allowable gross annual revenues.
6. Fix rates for the service rendered which would have provided the public utility for the particular year (for which its annual expenses were determined in accordance with paragraph 4 above) with an amount equal to such allowable gross annual revenues.
Many of appellants’ arguments represent attempts to circumvent the statutes of this state and the uniform decisions of this court with respect to the statutory rate base. For example, it is argued that the dollar amount of return should be based upon the public utility’s actual “earnings requirements”; and that, after this is done, the rate of return should be found by determining the percentage of the statutory rate base which such dollar amount of return represents. Further, it is argued that the 5.94 per cent return on the statutory rate base approved by the commission would, if 45 per cent of its capital were replaced by debt, represent 9.26 per cent earnings on “total capitalization” and a 9 per cent return on the “net investment” in this public utility. However, under the Ohio statutes and the decisions of this court, the percentage return is to be related not to the “total capitalization” or to the “net investment” but to the statutory rate base (reconstruction cost new less depreciation) so that neither the actual capital of or net investment in this public utility nor its actual earnings requirements are really material in a proceeding of this kind. Any such method of determining or testing the dollar amount of return as that which is advanced by appellants would eliminate any need at all for determining the statutory rate base. The reasons advanced in support of such arguments have previously been considered and rejected as unsound by this court. See East Ohio Gas Co. v. Public Utilities Commission, supra (133 Ohio St., 212), 218, 219.
In determining the rate of return to which this pubic utility is entitled, consideration may be given to what would be reasonably required to provide for such items as taxes on income, interest on debt, dividends on stock, and a “reservation * * for surplus, depreciation, and contingencies” (Section 4909.15, Revised Code) of a company of this kind organized to provide *445 the public with the use of property which is such as this utility provides and which has a value equal to the statutory rate base. Certainly, to give this public utility more than so reasonably required to provide for such items would be to allow it a higher rate of return than our statutes authorize. However, under our statutes, the amount of the debt and of the capital stock of such a hypothetical company would necessarily depend upon the statutory rate base, — not upon the net investment in or capital of Ohio Bell. In other words, the investment in the debt and. stock of such a hypothetical company would necessarily be substantially equal to the statutory rate base, and thus, after the many years of operation by Ohio Bell and the changes in costs during those years, would have only a remote relationship to the net investment in Ohio Bell.
For example, in the instant case the statutory rate base unanimously approved by the commission was over $422,000,000. In considering what the earnings requirements of such a hypothetical company would be, we must recognize that it would have to have, as of the date certain, property which would then have a reconstruction cost new less depreciation of over $422,000,000. In order to acquire such property then, it would need $422,000,000. Even if it was able to borrow about 33 per cent of that $422,000,000, or about $140,000,000 at 314 or 3% per cent interest, it would still have to sell about $282,000,000 worth of stock. Neither appellants nor the opinion of the dissenting commissioner considers the earnings requirements of such a hypothetical company. Instead, they talk only about a company having less than $300,000,000 total for stock and debt. After selling that lesser amount of stock and debt, the company they talk about would have less than $300,000,000 to buy the assets, which our statutes require us to recognize as having for rate-making purposes a value of over $422,000,000.
It can probably be demonstrated that the earnings requirements of any public utility corporation, that can borrow money at less than 4 per cent interest, would be less if a substantial portion of its capital requirements were provided for partly by debt than its earnings requirements would be if its capital requirements were provided for only by stock, especially since the interest payable on debt, unlike dividends payable or earn *446 ings on stock, would be deductible under present tax laws in determining the income tax liability of such a corporation. However, appellants have not argued that there is any evidence tending to prove that the amounts available to Ohio Bell by reason of the decision of the Public Utilities Commission in the instant proceeding for requirements, such as taxes on income, interest, dividends, surplus, depreciation and contingencies, would exceed the reasonable requirements therefor for a hypothetical company with a capital sufficient to enable it to acquire $422,000,000 of assets. Their argument, about the earnings requirements of a company having a very much smaller amount of capital, represents a subtle attempt to circumvent the Ohio statutory requirements with respect to determination of the rate base.
Appellants have contended also that the Public Utilities Commission committed certain errors in' its determination of the statutory rate base.
Thus, although the Public Utilities Commission deducted over $9,500,000 from the rate base because of the pronouncement made by this court in paragraph six of the syllabus of City of Columbus v. Public Utilities Commission, 154 Ohio St., 107, 93 N. E. (2d), 693, it is the contention of appellants that that paragraph of the syllabus required the commission to deduct over $32,000,000 more from the rate base. On the other hand, if the Public Utilities Commission had followed the earlier decision rendered in and paragraphs one, two and three of the syllabus of City of Cincinnati v. Public Utilities Commission, 113 Ohio St., 259, 148 N. E., 817, it would have deducted nothing from the' rate base on account of any amount by which this utility’s reserve for depreciation exceeded the observed depreciation of its property. See also paragraph three of the syllabus of City of Marietta v. Public Utilities Commission, 148 Ohio St., 173, 74 N. E. (2d), 74. Although the opinion in City of Columbus v. Public Utilities Commission, supra (154 Ohio St., 107), refers to and quotes from the majority opinion of City of Cincinnati v. Public Utilities Commission, supra (113 Ohio St., 259), and also refers to City of Marietta v. Public Utilities Commission, supra (148 Ohio St., 173), that opinion does not *447 expressly disapprove Lióse earlier decisions, any portions of the syllabi thereof or the reasoning advanced in the opinions supporting those decisions and syllabi. Further, there is no reference in the syllabus of the Columbus case either to the Cincinnati or to the Marietta case. Also, this court in its two subsequent reviews of the subsequent actions of the Public Utilities Commission in the proceedings which were reviewed in City of Columbus v. Public Utilities Commission, supra (154 Ohio St., 107), apparently receded somewhat from the pronouncement which it had made in paragraph six of the syllabus of that case and especially from what had been said in the opinion of that ease with respect to that pronouncement. See Ohio Bell Telephone Co. v. Public Utilities Commission, 155 Ohio St., 526, 99 N. E. (2d), 653, and City of Columbus v. Public Utilities Commission, 158 Ohio St., 101, 106 N. E. (2d), 775.
The pronouncement made in paragraph six of the syllabus of City of Columbus v. Public Utilites Commission, supra (154 Ohio St., 107), apparently originated in the concurring opinion of Marshall, C. J., in City of Cincinnati v. Public Utilities Commission, 105 Ohio St., 181, 198, 137 N. E., 36, and was reiterated by him in his dissenting opinion in City of Cincinnati v. Public Utilities Commission, supra (113 Ohio St., 259); and it was rejected by the decision and by the conclusions and the reasons stated therefor in paragraphs one, two and three of the syllabus and in the majority opinion of Jones, J., in the latter case and also by the unanimous decision, paragraph three of the syllabus and the opinion of Hart, J., in City of Marietta v. Public Utilities Commission, supra (148 Ohio St., 173).
One fallacy in the reasoning supporting a conclusion such as that stated in paragraph six of the syllabus of City of Columbus v. Public Utilities Commission, supra (154 Ohio St., 107), is disclosed by the portions of the opinion in 105 Ohio St., at the middle of page 198 and at the top of page 218, making it apparent that Chief Justice Marshall was proceeding upon the premise that the rate base was limited by the invested capital of the utility. As hereinbefore pointed out, that premise has been consistently rejected by this court.
As pointed out by Jones, J., in the majority opinion in *448 113 Ohio St., at page 284, any “balance in the account ‘reserve for accrued depreciation’ is merely an item of bookkeeping.” If the rate base depended upon invested capital or the net investment in the utility, that bookkeeping item might be significant and helpful in a proceeding of this kind. However, as hereinbefore pointed out, the net investment in or invested capital of a public utility is not material in determining its rates under our Ohio statutes as consistently interpreted by this court. Under our statutes, the rate base is tibe reconstruction cost new of the utility’s property less actual observed depreciation. There is no statute authorizing deduction of book depreciation. “Existing” depreciation is the only depreciation to be deducted in determining the net value of the utility’s property for rate-making’ purposes. See subdivisions (E) and (F) of Section 4909.05 and Section 4909.09, Revised Code.
After a thorough study of the reasoning in the opinions in City of Cincinnati v. Public Utilities Commission, supra (105 Ohio St., 181, 113 Ohio St., 259), City of Marietta v. Public Utilities Commission, supra (148 Ohio St., 173), and City of Columbus v. Public Utilities Commission, supra (154 Ohio St., 107), and of the authorities cited therein, we have come to the conclusion that we should approve and follow paragraph three of the syllabus of City of Marietta v. Public Utilities Commission, supra (148 Ohio St., 173), and paragraphs one, two and three of the syllabus of City of Cincinnati v. Public Utilities Commission, supra (113 Ohio St., 259). This, of course, requires us to disapprove of and overrule paragraph six of the syllabus of City of Columbus v. Public Utilities Commission, supra (154 Ohio St., 107). Further, this disposes of all the contentions of appellants with respect to the insufficiency of deductions by the commission from reconstruction cost new less depreciation on account of any amount by which this utility’s reserve for depreciation exceeded the observed depreciation of this utility’s property.
We believe that the foregoing observations dispose of those claimed errors which involve questions of law. With respect to the claimed errors involving questions of fact, this court has determined that the findings of the commission are not against the weight of the evidence. It is our conclusion that the orders *449 of the Public Utilities Commission appealed from are neither unreasonable nor unlawful, and they are, hereby, affirmed.

Orders affirmed.

Matthias, Zimmerman, Stewart, Bell and Taft, JJ., concur.