The errors assigned by the plaintiffs in error may be epitomized thus:
1. The commission did not make a detailed valuation as provided in Section 499-9 of the General Code.
2. The commission availed itself of the services of its employes in investigating and determining values, operating expenses, and revenues.
This action grew out of a protest filed under favor of Section 614-20, General Code (108 O. L., pt. 2, 1094), by individual patrons of the Pomeroy Middleport Telephone Company against a new schedule filed by the company with the Public Utilities Commission. A hearing was had and evidence received touching the revenue, operating expense, and value of the physical plant of the company; an investigation was made by the telephone expert of the Public Utilities Commission, a report filed by him, and a finding and order made, based in part upon such report. No itemized inventory was made either by the Utilities Commission or by the Pomeroy Middleport Telephone Company.
The question here presented is whether the Utilities Commission may fix rates providing for a reasonable return upon the value of the property used and useful without first having made an itemized inventory.
Counsel for the defendants in error undertake to *Page 12 
draw a distinction between hearings had under Section 499-8, General Code, and hearings had under Section 614-20 and succeeding sections, and argue that were it not the intention of the Legislature to distinguish in respect to the valuation of the property between complaints made under Section 499-8 and those made under Section 614-20 and succeeding sections there was no occasion for the enactment of the separate provisions. Without determining what the occasion for the enactment of the separate provisions may have been, we are unable to make the distinction. The necessity for the ascertainment of the value of the physical property of the public utility used and useful might as well appear upon a complaint filed under one provision as under the other, the necessity arising where the operating income exceeds the operating expense to such an extent that it becomes necessary for the commission to determine the reasonableness or unreasonableness of the excess as a return upon the value of the property used and useful.
Section 499-8, as originally enacted, is found in 103 Ohio Laws, p. 808, being Section 21 of an act "to create the Public Utilities Commission of Ohio," and reads:
"The commission, for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities or railroads of this state, or for any other purpose authorized by law, shall investigate and ascertain the value of the property of every public utility or railroad in the state, used and useful for the service and convenience of the public. At the request *Page 13 
of the council of any municipality the commissionshall also investigate and ascertain the value of the property of any public utility used and useful for service and convenience of the public where the whole or major portion of such utility is situated in such municipality."
The Legislature in that section used language which ordinarily is construed as mandatory, and would seem to have intended that the commission for the purpose of ascertaining the reasonableness and justice of rates and charges should in all cases ascertain the value of the property used and useful for the service and convenience of the public, and in the succeeding section the Legislature provided the manner of making an inventory.
After a period of approximately two years, the Legislature amended Section 499-8, General Code (106 O. L., 225), to read as follows:
"The commission, for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities or railroads of this state, or for any other purpose authorized by law, may investigate and ascertain the value of the property of any public utility or railroad in this state, used or useful for the service and convenience of the public. At the request of the council of any municipality the commission after hearing and determining thatsuch a valuation is necessary may also investigate and ascertain the value of the property of any public utility used and useful for the service and convenience of the public where the whole or major portion of such utility is situated in such municipality."
It will be observed that the only change which *Page 14 
the amendment made with reference to utilities generally was the substitution of the word "may" for the word "shall," and with reference to utilities located in whole or major portion within a municipality the word "shall" was eliminated, and the words, "the commission after hearing and determining that such a valuation is necessary may," were substituted.
Whether the amendment was made because experience had demonstrated the impracticability of requiring a valuation, in every case, or whether it was made to clarify the language of the original section, we have not the means of informing ourselves, but it is apparent that where a section is amended, and the only amendment in the section is to change words, mandatory in their ordinary interpretation, to words which merely authorize the performance of certain acts, the intention of the Legislature was to either clarify its former expression, from an apparent command to a mere authorization, or to withdraw the command and substitute an authorization.
As we view it, however, the amendment, and substitution of language which merely authorizes for mandatory language, as applied to cases where the question as to the reasonableness of the return upon the value of property is involved, are of no significance, for the reason that necessarily in those cases where the operating income exceeds the operating expense to such an extent that it becomes necessary for the Public Utilities Commission to determine whether that excess affords more than a reasonable return upon the value of the property, used and useful, the commission must first find the *Page 15 
value of the property as a basis from which to determine whether the return is reasonable or unreasonable, whether the investigation be under favor of Section 499-8 or Section 614-20 and succeeding sections, and if the Legislature in the amendment to original Section 499-8 had in mind its clarification, and Section 614-20 and succeeding sections are to be construed in pari materia therewith, the amendment failed to clarify in the respect which concerns the court in the instant case.
It will be observed that neither in Section 499-8 nor in Section 614-20 and succeeding sections does the Legislature declare that the commission shall ascertain the value of a public utility by the process of taking a detailed inventory of its property, but, on the contrary, it provided in Section 499-8 that the commission "may investigate and ascertain thevalue of the property," and, where the property is located wholly or a major portion thereof in a municipality, at the request of such municipality the commission, "after hearing and determining that such a valuation is necessary, may also investigate and ascertain the value of the property." And it provided in Sections 614-20, 614-21, 614-22 and 614-23 that if "either upon complaint or on its own initiative the commission shall be of opinion after hearing that any rate * * * is or will be unjust, unreasonable, unjustly discriminatory, unjustly preferential, or a violation of law * * * or that the maximum rates, charges, tolls or rentals, chargeable by such public utility are insufficient to yield reasonable compensation for the service rendered," the commission "shall, with due regard among other *Page 16 
things, to the value of all of the property of the public utility actually used and useful for the convenience of the public * * * fix and determine the just and reasonable rate, fare, charge, toll, rental or service to be thereafter rendered."
It is worthy of note that in no section providing for a determination by the commission of the justness, reasonableness, or lawfulness of any rate charged is there any provision requiring an inventory to be made either by the Public Utilities Commission or the public utility. Section 499-8 provides for an investigation and ascertainment of the value of the property, and Sections 614-20, 614-21 and 614-23 provide for a hearing and for the fixing of a rate "with due regard among other things, to the value of all of the property." Nowhere in the act do we find any provision, other than in Section 499-9, with reference to the process of determining value which would indicate that any other course is required to be pursued by the commission in determining value than is pursued in determining value in courts of justice, except that in that respect the commission is authorized to avail itself of the services of its engineers, experts and other employes, unless Section 499-13, General Code, must be construed to require an appraisement under Section 499-9. That section provides:
"Whenever the authority is conferred or the obligation imposed by law upon the commission to ascertain the value of any public utility or railroad, such valuation under such authority or obligation shall be made in accordance with the provisions of this act."
Section 499-9, General Code, is a part of "this *Page 17 
act," and since valuation by the commission is by Section 499-13 mandatorily required to be made in accordance with the provisions of "this act," and the whole act necessarily includes all of its parts, if the various parts of the act can be reconciled so as to give force and effect to Section 499-9, as well as to the other provisions of the act, it becomes necessary for the court to give effect to that section.
An analysis of Section 499-9 discloses that thecommission is by that section commanded "to prescribe the details of the inventory of the property of each public utility," and each public utility is commanded to "include all the kinds and classes of property, with the value of each." But when the Legislature in that section took up the subject of the commission ascertaining the value of the various kinds and classes of property, it authorized the commission "to ascertain and report in such detail as it may deem necessary as to each piece of property" so as to show separately the following facts:
A. Original cost of land.
B. The value of land by comparison as of a date certain.
C. Additional value of land by reason of its ownership and use.
D. The cost of new production as of a date certain of physical property other than lands.
E. Depreciation from new production.
F. Net value.
G. Additional value by reason of franchise, good will, and finances.
The record in this case does not disclose the ownership of any land by the company. The commission, *Page 18 
therefore, was not required to make any classification or separate valuation under the classifications A, B and C.
It made a valuation under the classifications "D," "E," and "F," as follows:
"That as of May 1, 1920, the reproduction and present value of the property of the defendant company were, respectively, the sums of ['D'] $81,618.73 and ['E'] $60,626.18.
"That, applying the accrued depreciation, at the rate of 5% per annum, the present value of said property as of May 1, 1922, was the sum of ['F'] $54,564.57."
The record discloses no "kinds and classes" of property except physical property other than lands. The commission is specially authorized by Section 499-9 "in ascertaining the value of the various kinds and classes of property * * * to ascertain and report in such detail as it may deem necessary as to each piece of property * * * to show" value as specified in "A," "B," "C," "D," "E," "F," and "G." The finding shows the cost of new production as of a date certain, depreciation from new production, and net value. That much the commission, where it found it necessary to make a valuation at all, was obliged to find and report, by reason of Section 499-9, but was not obliged to find and report more. No additional value, as provided in "G," was claimed or allowed.
The discretion to ascertain and report in such detail as was deemed necessary being vested in the commission, when, in the exercise of that discretion, the commission ascertained and reported *Page 19 
the ultimate facts required by Section 499-9, those facts as to this case being cost of new production, depreciation from new production, and net value, it will be presumed that the commission did not deem it necessary to ascertain and report in any greater detail, and under the facts of this case it cannot be said that it abused its discretion in determining that further detail was unnecessary.
The valuation as of May 1, 1920, in the finding of December 6, 1922, was a compliance by the commission with Section 499-9, as we interpret that section.
The record does not disclose the process by which on April 13, 1923, the commission added to the net value of December 6, 1922, the sum of $14,500, other than as recited in its finding and order upon rehearing of that date to the effect that it was by reason of additions, extension, improvements, and replacements. That addition to the net value was granted upon a rehearing, which, by agreement of the parties, was had upon the record and testimony of the hearing had prior to the finding and order of December 6, 1922, at which, as well as at the rehearing, doubtless the report of its own telephone expert filed October 31, 1922, was an important, if not a controlling, factor in its determination of the facts.
This brings us to the second proposition involved in this case, to-wit, the right of the commission to avail itself of the service of its engineers, experts, and other employes in investigating and determining values, operating expenses, and revenues, and to base its conclusion in whole or in part upon such investigation. *Page 20 
Section 499-8 provides:
"Every public utility * * * shall furnish to the commission, its engineers, experts or other assistants * * * maps, profiles, contracts, reports of engineers and other documents, records and papers * * * in aid of any investigation and ascertainment of the value of its property."
Section 499-11 provides:
"The commission, during the making of the valuation * * * and after the completion * * * shall thereafter in like manner keep itself informed through its engineers, experts and other assistants of all extensions and improvements or other changes in the condition and value of the property * * * and shall ascertain the value of such extensions," etc.
Section 499-15, after authorizing the commission to hold a hearing for the purpose of ascertaining the value of the property of a public utility, provides:
"But this provision shall not prevent the commission from making any preliminary examination or investigation * * * or from inquiring into such matters in any other investigation or hearing. * * * The commission is empowered to resort to any other source of information available."
Section 614-6 provides:
"The commission shall have power, either through its members or by inspectors, or employes * * * to examine under oath, at any time and for assisting the commission in the performance of any powers or duties of the commission, *Page 21 
any officer, agent or employe of any public utility * * *."
A mere reading of these sections in connection with the various other sections of the act confirms the power of the commission to avail itself of the services of the engineers, experts, and other assistants which it is specially empowered by the Legislature to employ, and it acts within its authorized powers in sending its experts to make an independent investigation as to value, operating expense, and revenue, and is authorized to give to the report of such experts such weight in establishing value, or any other issue, as the experience, learning, thoroughness, integrity and dependability of the experts, or other assistants, in the judgment of the commission, justify.
The plaintiffs in error, however, were entitled to examine such report of the engineers and to cross-examine such engineers upon any or all matters contained in such report. The report, being in the nature of evidence in the case, is, like any other evidence, subject to analysis and impeachment, and had an application to examine the report been made and refused, or an application been made to cross-examine the engineers and refused, this court would regard such refusal as reversible error.
In the instant case, however, the docket entries disclose, of date October 3, 1922, more than two months prior to the finding and order of the commission: "Report of telephone expert filed."
A party to a litigation will not be heard to complain in a reviewing court that he did not know of the existence of a document filed in the case in *Page 22 
the trial court or tribunal, of which he could have known by an inspection of the record, nor where there has been no effort made to assert or secure his rights with reference to such document in the tribunal after discovery.
Plaintiffs in error especially are not in position to complain in this case, in view of the fact that subsequent to the filing of the report of the telephone expert the commission recited in its finding and order that it had taken into consideration such report, and plaintiffs in error, thereafter, upon a rehearing being granted, without asserting their right to cross-examine the engineers of the commission upon their report, entered into a stipulation that the rehearing might be had upon the record theretofore made.
The record filed here while disclosing the filing of the report of the telephone expert does not contain such report or a copy thereof. No suggestion of diminution of the record, or effort of any kind to supplement the record by requiring the commission to certify such report to this court, in so far as we are advised, has been made.
The report, being a part of the evidence in this case, and the commission having recited in its finding that the report was taken into consideration, this court is not in possession of all the evidence considered by the commission, and is, therefore, in no position to determine whether the value, operating expense, and operating revenue fixed by the commission are supported by the evidence, or are just and reasonable, but is obliged to accept the valuation, operating expense, and operating revenue established by the commission. Accepting *Page 23 
the valuation, operating expense, and operating revenue, this court cannot say that a return upon such valuation of 7 per cent., plus, is unjust or unreasonable.
Order affirmed.
JONES, MATTHIAS and DAY, JJ., concur.
MARSHALL, C.J., concurs in the judgment and propositions 1, 2, 4, 5 and 6 of the syllabus, but dissents from proposition 3 of the syllabus.
ALLEN, J., dissents from proposition 3 of the syllabus and from the judgment.
WANAMAKER, J., not participating.