Stewart, J.
Two of the appellants filed 31 assignment of error, two filed 29 assignments, one filed 8 and one filed 7. We have examined them all and, since so many of them overlap, we shall consider in this opinion the question whether the order of the Public Utilities Commission is unreasonable and unlawful in the light of the relevant complaints made by appellants.
Complaint is made that the Public Utilities Commission in its order of May 7, 1953, overruled its final order of February 15, 1952, in which it denied any increase in Ohio intrastate coal rates, after the time for appeal therefrom had expired, without any evidence of change in circumstances and conditions occurring since its former order or without any evidence that could not with reasonable diligence have been offered in the former proceeding.
It is urged that the Public Utilities Commission does not have continuing jurisdiction over final orders as to which the time for appeal has expired, without any evidence, of changed circumstances occurring after the order.
The manner in which the Public Utilities Commission considered its previous orders is set forth in its finding and order dated April 23, 1952, in which it designatéd the hearing on the application, resulting in *226 the order which is the subject of the present cases, as a separate proceeding, saying in part:
“The commission coming now to consider its finding and order hereinbefore made on February 15, 1952, and the ‘further application of steam railroad carriers for authority to increase freight rates and charges to the full extent sought in the amended application of April 30, 1951’ (herein filed on March 26, 1952), and the ‘third supplemental application of steam railroad carriers for short term permission and waiver of tariff regulations in respect of increased freight rates and charges intrastate within Ohio’ (herein filed on April 18, 1952), finds:
“1. That the aforesaid finding and order made and issued by this commission on February 15, 1952, was a separate and final order with respect to all matters and things therein set forth.”
The Public Utilities Commission said further that in order to avoid ‘ ‘ any and all possibility of misunderstanding with respect to its aforesaid finding and order of February 15, 1952,” the further application filed on March 26,1952, and the third supplemental application filed on April 18, 1952, which might be construed as an application for rehearing with respect to matters and things theretofore determined in the order of February 15,1952, should therefore be docketed and assigned a new separate docket number, and that all further proceedings on the pending applications should be continued under the new docket number.
In considering this complaint of appellants, certain statutes conferring jurisdiction on the Public Utilities Commission in regard to the regulation of freight rates are pertinent, particularly Section 538, General Code (Section 4909.30, Revised Code), and Section 541, General Code (Section 4909.03, Revised Code), which sections are:
Section 538. “Upon application of any person or any railroad and after notice to the parties in interest *227 and opportunity to be heard as provided in this chapter for other hearings, has been given, the commission may rescind, alter or amend an order fixing any rate or rates, fares, charges or classification, or any other order made by the commission. Certified copies of such orders shall be served and take effect as provided for original orders.”
Section 541. “All rates, fares, charges, classifications and joint rates fixed by the commission shall be in force and be prima facie lawful for two years from the day they take effect, or until changed or modified by the commission, or by an order of a competent court in an action under the provisions of this chapter.”
In construing the latter section this court said in the case of Pittsburgh & Lake Erie Rd. Co. v. Public Utilities Commission, 128 Ohio St., 388, 191 N. E., 467:
“Section 541, General Code, confers upon the Public Utilities Commission continuing juridiction in the matter of railroad rates, fares and charges, and pursuant to the provisions of Section 538, General Code, the commission may rescind, alter or amend an order fixing any rate or rates, fares, charges or classifications. ’ ’
The Public Utilities Commission did not act either arbitrarily or capriciously in docketing the applications of the railroads as new matter, and each of the parties was entitled to introduce all the evidence pertinent to the situation then before the commission, uninhibited by the fact that some of the evidence might have theretofore been presented. The separate docketing of the applications created this opportunity.
The primary and most vigorously presented claim of appellants is that the action of the Public Utilities Commission was unreasonable and unlawful in that such commission established freight rates applicable to bituminous coal in Ohio without requiring the railroads to submit evidence of the value of their prop *228 erty used and useful in this state in the transportation of bituminous coal.
Appellants place their chief reliance on the case of Lindsey v. Public Utilities Commission, 111 Ohio St., 6, 144 N. E., 729, wherein this court said:
“1. Where the Public Utilities Commission of Ohio in any hearing before it has the question whether a rate, fare, charge, toll, or rental will yield a reasonable return upon the value of the property of a public utility used and useful for the convenience of the public, it is required, under Sections 499-9 and 499-13, General Code, to ascertain and report value, classified as in the various alphabetical subdivisions of Section 499-9, General Code.
“2. In ascertaining the value of the property of a public utility used and useful for the convenience of the public, the Public Utilities Commission of Ohio, by virtue of the provisions of Section 499-9, General Code, is vested with a discretion whether it will ascertain arid report value in any greater detail than to show the ultimate facts required by the alphabetical subdivisions of that section.
“3. Where the property of a public utility, used and useful for the convenience of the .public, in size and character is not unlike many other properties, and its value can be ascertained by inspection and comparison, it is not an abuse of discretion for the Public Utilities Commission to fail to ascertain and report value in any greater detail than to show the ultimate facts required by the alphabetical subdivisions of Section 499-9, General Code.”
In considering this complaint of appellants it must be borne in mind that the present appeals relate only to the freight rate on one commodity, and that the new and increased rates are in effect as to all other commodities, without protest, so that a valuation of all the property of the railroads would have little effect *229 upon the propriety of a single rate on a single commodity.
It must also be borne in mind that railroads operate as interstate carriers, and that costs incurred in repairs, supervision, and many other activities in many states other than Ohio are properly chargeable to business done in this state.
The Public Utilities Commission did not require evidence of a valuation of the property and, therefore, the question of law presented to this court is whether, under the statutes, the order of that body, without such valuation, is unreasonable or unlawful.
Both parties concede that the language used in the applicable statute could be construed to give the Public Utilities Commission discretion in the matter.
The applicable statute is Section 499-8, General Code (Section 4904.4, Revised Code), which reads in part:
“The commission, for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities or railroads of this state, or for any other purpose, authorized by law, may investigate and ascertain the value of the property of any public utility or railroad in this state, used or useful for the service and convenience of the public. At the request of the council of any municipality the commission after hearing and determining that such a valuation is necessary may also investigate and ascertain the value of the property of any public utility used and useful for the service and convenience of the public where the whole or major portion of such utility is situated in such municipality. ’ ’
This section, as formerly enacted, contained the word, “shall,” where it now contains the word, “may,” and it would seem that the valuation of the property of a public utility or railroad, in reference to rate fixing, is now, within proper bounds, discretionary with the Public Utilities Commission.
*230 Appellants rely on the Lindsey case, supra, but it must be observed that the first paragraph of the syllabus in that case does not say that the Public Utilities Commission must always ascertain and report value, but it is required to do so only when it has before it the question whether a rate, fare, charge, toll, or rental will yield a reasonable return upon the value of the property of the utility used or useful for the convenience of the public.
In determining the reasonableness of a freight rate on a single commodity, it is not necessarily essential to make a valuation of the railroad’s property, however logically it may be argued that such a valuation should be made in reference to a complete rate structure to ascertain whether the yield therefrom constitutes a reasonable return on the value of the property.
In the opinion in the Lindsey case it is stated:
“As we view it, however, the amendment, and substitution of language which merely authorizes for mandatory language, as applied to cases where the question as to the reasonableness of the return upon the value of property is involved, are of no significance, for the reason that necessarily in those cases where the operating income exceeds the operating expense to such an extent that it becomes necessary for the Public Utilities Commission to determine whether that excess affords more than reasonable return upon the value of the property, used and useful, the commission must first find the value of the property as a basis from which to determine whether the return is reasonable or unreasonable, whether the investigation be under favor of Section 499-8 or Section 614-20 and succeeding sections, and if the Legislature in the amendment to original Section 499-8 had in mind its clarification, and Section 614-20 and succeeding sections are to be construed in pari materia therewith, the amendment failed to clarify in the respect which concerns the court in the instant case.
*231 “It will be observed that neither in Section 499-8 nor in Section 614-20 and succeeding sections does the Legislature declare that the commission shall ascertain the value of a public utility by the process of taking a detailed inventory of its property, but, on the contrary, it provided in Section 499-8 that the commission ‘may investigate and ascertain the value of the property,’ and, where the property is located wholly or a major portion thereof in a municipality, at the request of such municipality the commission, ‘after hearing and determining that such a valuation is necessary, may also investigate and ascertain the value of the property. ’ ”
It is apparent that the Public Utilities Commission is required to ascertain and report value only where it has before it the question whether a rate will yield a reasonable return on the value of the property of the utility used and useful for the convenience of the public, and it is obvious that in the present cases such a rule would not apply, where, only the reasonableness of the freight rate of a single commodity is in question.
The Lindsey case concerned the rate structure of an Ohio telephone company entailing no questions of interstate operations or the fact that most of the rates in operation were not before it.
It must also be observed that certain special statutes are applicable to the regulation of railroad freight charges, particularly Section 504-1, General Code (Section 4909.20, Revised Code), Section 527, General Code (Section 4909.26, Revised Code), and Sections 535 and 536, General Code (Section 4909.28, Revised Code), which all vest in the commission the right to change unreasonable railroad freight rates upon hearing but which contain no requirement that such rates shall be changed in an amount in any way related to the valuation of the property of the railroad. This situation applies with special force in the present cases for the reason that the previous rates on bituminous *232 coal were established in amounts insufficient in themselves to yield a fair return of profit on the property allocated for this service. This has been an established custom in this state for many years. See Hocking Valley Ry. Co. v. Public Utilities Commission, 92 Ohio St., 362, 110 N. E., 952. In that case a rate was fixed for transporting bituminous coal between Nelsonville and Toledo, and the method followed by the Public Utilities Commission therein was a determination of the actual cost of hauling coal per ton followed by an arbitrary determination that this cost should be 60 per cent of the rate charged. Thereaftér by such computation a rate was established which the railroads contended was unreasonably low and not fair compensation for the service performed and which rate they claimed discriminated unreasonably against shippers of coal from the Pomeroy district of Ohio.
This court found the determination of the Public Utilities Commission not unreasonable or unlawful and held in paragraph two of the syllabus that “the state, in the exercise of the discretion with which it is vested, in prescribing rates for intrastate traffic may make reasonable classifications of business.” No direct mention was made concerning the valuation of the property of the railroads.
In the hearing before the Public Utilities Commission, counsel for the railroads stated that “the nature of railroad business is such that it is simply impossible to make rates on given commodities between given points strictly on a cost standard.” The reason given for this statement is that such low grade commodities would not move if the direct cost of transporting them, plus a proportionate share of the overhead, was charged.
Counsel stated further that there is competition among the different railroads with varying costs of operation, and each railroad must charge a price comparable with the prices of others if it is to get any *233 business in transporting 'such commodities. Likewise, there is competition among producers of the same commodities, with the result that rates are fixed among such producers so that one more distant from the market may have an identical advantage with one closest. Examples of these competitive rates abound in the record in the present cases.
Testifying concerning this competitive rate situation among producers, one witness stated as follows:
“It is axiomatic that railroad freight rates are so made that the earnings per ton per mile decline as distances increase, and coal rates are no exception to the rule. Thus it is generally, although not always, true that the rates from any given coal-producing district outside of Ohio to a point within Ohio reflect lower ton-mile earnings than from a district in Ohio to the same destination. Beyond this normal condition, the railroads, in co-operation with coal producers and receivers, and with the consent of the Interstate Commerce Commission, many years ago established and have since maintained systems of coal rates which related competitive producing fields through the medium of what traffic people call ‘fixed differentials.’ These differentials in the beginning were made and have been continued in substantial disregard to distance and other rate-making considerations, and they were and are representative of the lowest spreads in rates that the railroads could afford to make, or contrariwise, the widest spreads in rates that would satisfy within reason all of the competitive coal producers and afford the consumers the widest possible sources of supply. Thus, it is that the differentials were made and are maintained as the best means of promoting competition between railroads, between coal producers and coal consumers. No other system of rate-making has yet been devised that can be substituted for fixed origin differentials and as one who has given this question *234 much study I express the opinion that no one ever will improve upon this system. ’ ’
The Ptiblic Utilities Commission found that the proposed rates for bituminous coal in Ohio represent only 92 per cent of the cost incurred by the railroads in transporting coal, and that the rates without the increase represent only 82 per cent.
Although appellants challenged the basis upon which this finding was made, the finding is supported.by evidence in the record.
We hold that the Public Utilities Commission has discretion, in the fixing of a single freight rate, to base that rate upon matters other than the valuation of the property of the railroad and the actual cost of operation, although it has full authority to require such evidence of valuation if in its opinion such findings are necessary to a proper determination of rates. But, in the present cases, it was not error for the Public Utilities Commission to fix the rate for bituminous coal without determining a valuation of the railroads ’ property.
The determination of whether there was an abuse of discretion in the action of the commission in establishing the 12 per cent increase in coal rates must be determined by a consideration of the evidence adduced on which sxich decision was based.
The record submitted to this court is exceedingly extensive and contains, among other things, the following :
Schedules of the investments in railroad property used in transportation service for each year from 1941 to 1951, inclusive, together with operating revenues, operating expenses, taxes and net income for each of those years; schedules showing for the year 1951 the net tons of coal which moved from each of the districts in Ohio to each of the larger cities in Ohio using coal, with the basic rate for each movement and the amount of the proposed increase and of *235 the revenue which will be received by such increase; and schedules showing the rates for comparable distances which are in effect in Pennsylvania, Virginia, New York and Maryland. The appellants also introduced schedules showing the rates in effect in Indiana and Illinois.
Evidence also was introduced to show that, although the increase in operating expenses, net rents and taxes per thousand gross-ton miles over the period between the years 1939 and 1951 was 101.7 per cent, the proposed increased rates from the various districts of Ohio in intrastate hauling would each be 88.1 per cent or less during the same period.
This evidence was ample to sustain the finding and order of the Public Utilities Commission from which the present appeals were taken, particularly since the increase in its present form is temporary and has a definite expiration date.
Appellants argue that the action of the Public Utilities Commission in adopting the same coal rates fixed by the Interstate Commerce Commission was an abdication of the rate-making power in this state- over intrastate freight rates.
Ex Parte No. 175 was before the Interstate Commerce Commission for an extended period of time during which many hearings were held, much evidence produced, -and three different rate changes ordered. The findings of the Interstate Commerce Commission as disclosed by its reports are detailed and the evidence recited therein would seem to fully substantiate its findings.
The Public Utilities Commission is a body entirely independent of the Interstate Commerce Commission and is in no way bound by any action of the latter, but it cannot be said that the Public Utilities Commission abdicated any of its authority by considering, the findings of the Interstate Commerce Commission in eon- *236 junction with the evidence in the proceeding before it with which we are concerned in these appeals.
From a review of the record which has been submitted to us, we can not find that the order of the Public Utilities Commission is unreasonable or unlawful, and it is, therefore, affirmed.

Order affirmed

Weygandt, C. J., Middleton, Taet, Hart, Zimmerman and Lamneck, JJ., concur.