Hart, J.
The appellant claims that the commission granted the applicant authority to refile its inventory as of March 31, 1949, which had been used in another proceeding before the commission; that no valuation or inventory was filed for new property added since *309 that time to the date certain in this proceeding, fixed as of March 31, 1952; that the applicant was credited with new property in the sum of $1,791,166.44, making a total valuation of property owned by applicant of $10,830,898.44 before depreciation; and that there was no' order of the commission relieving the applicant from filing such an inventory covering this period of time.
Appellant claims that such filing, unless waived, was a prerequisite to any order fixing rates of service. See Section 614-20, General Code, and Columbus Gas & Fuel Co. v. Public Utilities Commission, 127 Ohio St., 109, 187 N. E., 7.
Appellant, as a protestant, claims that it did not learn of these additions until the commission’s secretary filed his report, and that it had no opportunity to challenge it. However, the appellant moved to strike $1,791,166.44 from the rate base, which was overruled by the commission. No motion was then made to require the filing of an inventory. Under the statute, the action of the commission was a waiver of such inventory, which was within its power under Section 614-20, General Code.
Furthermore, applicant’s motion to dispense with an inventory, which motion was allowed, must be construed to have covered the entire scope of inquiry in which the commission was then engaged. See City of Cincinnati v. Public Utilities Commission, 151 Ohio St., 353, 364, 365, 86 N. E. (2d), 10; Lindsey v. Public Utilities Commission, 111 Ohio St., 6, 16, 144 N. E., 729. As a matter of fact, exhibit A, which was attached to the applicant’s application and which the commission permitted the applicant to file in lieu of a detailed inventory, covers the values of the additions to the company’s plant for the three years in question. This exhibit was at all times available to the appellant.
Another assignment of error made by the appellant *310 is tlxat the commission erred in permitting the filing of a discriminatory telephone service rate in the general area of Hebron and Buckeye Lake. The record shows that Hebron, a municipality, and Buckeye Lake, which is outside the corporate limits of Hebron, are on the same banded service rate, which means that subscribers to the service may call others throughout the area without the payment of toll charges. It appears also that the subscribers in the Buckeye Lake area may call free of toll no more stations than the subscribers in Hebron. However, within the corporate limits of Hebron the business service rate for an individual line is $9 per month and the residence service rate for an individual line is $5 per month, with corresponding rates for various service combinations, whereas, in the Buckeye Lake area the business service rate for an individual line is $10 per month and the residence service rate for an individual line is $6, with corresponding rates for various service combinations. In other words, there is a differential in the various types of service rates between the Hebron and Buckeye Lake areas in favor of the former of approximately 50 cents to $1 per month.
Appellant claims that the Hebron and Buckeye Lake exchanges are less than two miles apart, that both are located in contiguous business and social areas, and that such a differential in rates constitutes an unlawful discrimination in violation of Sections 614-13 and 614-14, G-eneral Code.
Section 614-13, provides generally that all charges made or demanded by a public utility for any service rendered shall be just and reasonable, and not more than allowed by law or by order of the commission.
The pertinent parts of Section 614-14 are:
“No public utility shall directly or indirectly, or by any special rate, rebate, drawback or other device or method, charge, demand, collect or receive from any *311 person, firm, or corporation, a greater or less compensation for any services rendered, or to be rendered, except as provided in this act, than it charges, demands, collects, or receives from any other person, firm, or corporation for doing a like and contemporaneous service under the same, or substantially the same circumstances and conditions.”
The general rule is that “a utility may charge but one rate for a particular service, and any discrimination between customers as to the rate charged for the same service under like conditions is improper; but a utility may, without being guilty of unlawful discrimination, classify its customers on any reasonable basis and make separate rates for each class.” 73 Corpus Juris Secundum, 1048, Section 27. See, also, 52 American Jurisprudence, 116, Section 87; Building Industries Exhibit, Inc., v. Public Utilities Commission, 150 Ohio St., 251, 80 N. E. (2d), 836.
In the instant case, as in most cases of like character, the decision must turn on a question of fact, whether there is a difference in the services rendered or in the conditions and circumstances under which they are rendered.
“If the evidence shows a difference in services rendered, it is usually a question of fact whether upon such difference there was an unjust discrimination as to the rates to different patrons.” 52 American Jurisprudence, 117, Section 87.
George B. Quatman, president of the applicant, was called upon cross-examination by the protestants and he explained in detail the claimed reasons for the difference in. rates between the Hebron area where is located the main exchange of that band and that of Buckeye Lake and Harbor Hills. The witness testified that the difference in rates resulted because of the excess mileage over which the company was obliged to maintain a limited number of telephones and the *312 heavy increased expense in maintaining those lines of service beyond the base-rate area. These locations are known in the telephone industry as “special locality rate areas.” The testimony showed that in practice there are many such areas throughout the state set up by other telephone companies, where the differences in rates are from small amounts to $3 per month.
There is an important element of justice served in such cases. The base-rate areas are established so that subscribers who can be served at the same average of cost are not obliged to carry the higher costs incident to furnishing service over long lines into sparsely settled areas.
In 52 American Jurisprudence, 116, Section 87, it is stated as follows:
“On the other hand, it is well settled that not all discrimination in rates is unjust. In order to constitute an unjust discrimination, there must be a difference in rates under substantially similar conditions as to service, and it is not an undue preference to make to one patron a rate lower than that made to another, where there exists differences in conditions affecting the expense or difficulty of performing the service which fairly justify a difference in rates.”
There was no evidence offered by the protestants to rebut this testimony, and a study of the record indicates that there was an increase of cost in rendering service to the Buckeye Lake and Harbor Hills area. This court can not say that the commission erred in allowing this rate differential as applied to these areas. See Building Industries Exhibit, Inc., v. Public Utilities Commission, supra.
The appellant complains further that the commission’s finding, opinion and order incorporates and adopts the secretary’s report, without any finding of fact to substantiate the same, contrary to the provi *313 sions of Section 614-46a, General Code, that “in all contested cases heard by the commission, it shall be the duty of the commission to file with the records thereof, written opinions setting forth the reasons prompting the decisions arrived at by the commission, together with a resume from the record of the facts upon which such decisions are based.”
The commission made ultimate findings of fact as follows:
“(a) That the value of the property of Ohio Central Telephone Corporation used and useful in the rendition of service to its subscribers as of March 31, 1952, is not less than $8,033,106.42;
“(b) That the proposed rates, which will provide an estimated return of 5.64% on the above $8,033,106.42 valuation, are not unjust, excessive or unreasonable and therefore should be permitted to become effective;
“(c) The record in this case disclosing that the quality of service being furnished by applicant, Ohio Central Telephone Corporation through certain of its exchanges is below the standards subscribers may reasonably require, this commission shall, on its own motion, cause hearings to be held regarding such deficiences in service, and at the conclusion of such hearings, an appropriate order will be drawn.”
The commission found, in addition to these formal findings, the facts hereinbefore set out in the statement of facts and that the applicant had complied with Section 614-20, General Code, with respect to submitting a valuation of its property used and useful in the rendition of telephone service, by filing a valuation as found by the commission in a previous proceeding and by adding thereto the valuations of the property added to the plant since April 1, 1949.
The reason that a more detailed finding was not made by the commission is, in part at least, explained by the further following statement in its report:
*314 “Tlie greater part of the testimony taken at these hearing's was submitted by complainants relative to deficiencies in the service being rendered. No testimony was submitted by the protestants tending to show that the engineering and accounting reports submitted in the report of the secretary of this commission in this matter on July 11, 1952, should be in any regard modified or amended.” (Italics supplied.)
Under the circumstances, we think the report of the commission is sufficient to satisfy the requirements of the statute. See Commercial Motor Freight, Inc., v. Public Utilities Commission, 156 Ohio St., 360, 363, 364, 102 N. E. (2d), 842. The operative facts in the instant ease are fully set out in the secretary’s report wherein are included the reports of the commission’s engineers and the reports of its accountants, all of which were undisputed and carried into the record to which reference is made by the report and finding of the commission. The appellant has not shown that it has suffered any prejudice growing out of the form of the finding of the commission.
Appellant claims further that the commission was without authority to grant the telephone company an increase of rates in view of a definite finding that the service rendered by it through certain exchanges was below standard. There was no specific order made on the subject, but the commission on its own motion deferred orders in that respect until after further hearings. The sequence in which any such orders may be made is within the sound discretion of the commission.
This court held as follows in the case of Elyria Telephone Co. v. Public Utilities Commission, 158 Ohio St., 441, 110 N. E. (2d), 59:
“2. Where the Public Utilities Commission finds upon sufficient evidence that the rates being charged by a utility are inadequate to provide a fair return on *315 the used and useful property of such utility and orders an increase in those rates, it may not condition the collection of such new rates on an improvement of services and facilities by the utility.
“3. Under the provisions of Sections 614-27 and 614-28, General Code, the Public Utilities Commission possesses the power to require a utility to render adequate service, but it lacks the authority to require that certain installations and improvements be made before the utility may claim and receive a just and reasonable rate for the services actually being rendered with its existing property and facilities.”
No witnesses were ottered by the appellant to directly attack the reasonableness of these rates. On the other hand, the evidence of the commission’s engineers and accountants as to specific facts and data was un refuted. This court is unable to find from the record that the order of the Public Utilities Commission in this case is unlawful or unreasonable. The order is, therefore, affirmed.

Order affirmed.

Weygandt, C. J., and Zimmerman, J., concur.
Middleton and Stewart, JJ., concur in paragraphs two, three and four of the syllabus and in the judgment.
Taft, J., concurs in paragraphs one, two and four of the syllabus and in the judgment.