Stewart, J.
Under Section 4903.13, Revised Code, the only question before us is whether, upon a consideration of the record, the order of the Public Utilities Commission of September 27,1954, is unlawful or unreasonable.
*111 As has been stated, the order of the Public Utilities Commission of May 1, 1952, relating to increased rates for all intrastate traffic, except coal, was not appealed from, and the order of May 7, 1953, granting increased rates as to coal was affirmed by this court in Toledo Edison Co. v. Public Utilities Commission, supra.
The order of September 27, 1954, merely extended the expiration date of these increases to December 31, 1955.
Testimony was heard by an attorney examiner who summarized the evidence and made findings of fact and conclusions of law based thereon.
At the outset of the hearing, application was made on behalf of the railroads to have the record made at the previous hearing (Toledo Edison case, supra) considered as a part of the evidence in this cause, and the examiner ruled that, since the application herein is for an extension of temporary rates already in effect and was made as a part of the same proceeding with the same case number, such record automatically is part of this cause.
The railroads introduced evidence which supplemented and extended the exhibits introduced in the previous hearing, bringing them down to date with such information as was available, with reference particularly to the experience of the 10 principal railroads operating in Ohio, only one of which, The Akron, Canton & Youngstown Railroad, has all its operations in this state.
These 10 railroads operate a grand total of 8,725 miles of railroad in Ohio, which is 20.8 per cent of their total mileage.
Evidence adduced at the hearing consists of statistics for the full calendar years of 1952 and 1953, and for the first quarter of 1954. The evidence tends to show that after the previous grant of increased rates, there was an initial improvement in the railroads’ rate of return which amounted to 4.43 per cent on their net investment, but that their earnings were adversely affected by a prolonged strike in the steel industry and by the termination of hostilities in Korea in July 1953, as a result of which carloadings fell off 16.7 per cent in the first 18 weeks of 1954 compared with a similar period in 1953.
The railroads experienced increases in wages and in material prices since July 1952, the evidence tending to show that on December 15, 1953, wages paid by railroads operating in Ohio *112 were five per cent higher than they were on July 1, 1952, and that since that time a further increase, which is expected to amount to 7.5 cents per hour, has been granted.
The evidence tends to show increases of 0.8 per cent in prices of fuel to the railroads and of 3.9 per cent in the prices of other railroad materials and supplies.
The decrease in income and increase in expenses have caused a sharp drop in net earnings since July 1953, and this caused net working capital to decline seriously.
The evidence tends to show that in the first three months of 1954 net railroad operating income of the 10 railroads operating in Ohio dropped 49 per cent and as to a similar period in
1953 net income declined 78.7 per cent; and that in the same period the four railroads in Ohio, which are the chief haulers of coal within the state, experienced a drop of 63.1 per cent in net railroad operating income for thé first three months of
1954 as compared with a similar period in 1953. Net income for the four railroads declined from $22,000,000 in the first three months of 1953 to a deficit of $5,000,000 in the same period in 1954.
In his findings of fact and conclusions of law, the attorney examiner points out that “the railroads’ evidence is based entirely upon aggregate figures combining figures for both inter and intrastate operations, giving figures for a region in which the railroads operate and containing no separation of figures as to the Ohio traffic. ’ ’
The examiner found also:
“The applicants are not required by Ohio law or by court interpretation of such law to present figures on Ohio operations only, because of the unavailability of said figures. The figures submitted by the applicants are proper and competent to be considered by this commission in this proceeding.
“This commission is not required by the statutes of Ohio or by the ‘Lindsey case’ to make an evaluation of the applicant’s property used and useful within the state of Ohio before considering in passing upon this request for an extension of existing rate increase.”
As stated by the companies, “the fundamental issue before this court is whether the need for increased revenue from Ohio *113 operations can be shown solely by aggregates of system-wide statistics. ’ ’
In considering this question it should first be noted that throughout the statutes relating to the authority of the Public Utilities Commission to fix rates, railroads are clearly differentiated from other public utilities.
Chapter 4909 of the Revised Code contains the statutes applicable to the fixing of rates, and Section 4909.01, Revised Code, contains the definitions applicable thereto and adopts as a definition of the term, “public utility,” the meaning thereof set forth in Section 4905.02, Revised Code. That section defines public utility as including “every corporation, company, copartnership, person, or association, their lessees, trustees or receivers, * * * but excepting such other public utilities as operate their utilities not for profit, such other public utilities as are owned or operated by any municipal corporation, and railroads as defined in Sections 4907.02 and 4907.03, of the Revised Code.”
Section 4907.01, Revised Code, also defines “railroad” as having the meaning set forth in Section 4907.02, Revised Code, which defines “railroad” as “any corporation, company, individual, or association of individuals-, or its lessees, trustees, or receivers appointed by a court, which owns, operates, manages, or controls a railroad or part of a railroad as a common carrier in this state. ’ ’
In the consideration of the statutes hereinafter quoted, this differentiation between railroads and other public utilities must be kept in mind.
Reliance is placed by appellants on Section 4909.04, Revised Code, as authority for the proposition that the Public Utilities Commission is required to make an evaluation of the railroads’ property used and useful in Ohio in considering the application to increase existing rates. That section provides in part as follows:
“The Public Utilities Commission, for the purpose of ascertaining the reasonableness and justice of rates and charges for the service rendered by public utilities or railroads, or for any other purpose authorized by law, may investigate and ascertain the value of the property of any public utility or railroad in this state used or useful for the service and convenience of the public. * * *
*114 “Every public utility or railroad shall furnish to the commission, or to its engineers, experts, or other assistants, as the commission requires, maps, profiles, contracts, reports of engineers, and other documents, records, and papers, or copies of any of them, in aid of any investigation and ascertainment of the value of its property, and the public utility or railroad shall grant to the commission or its agents free access to all of its premises and property and its accounts, records, and memorandums whenever and wherever requested by any such authorized agent. Every public utility or railroad shall co-operate with and aid the commission in the work of the valuation of its property in such further particulars and to such extent as the commission requires and directs. The commission may make all rules and regulations which seem necessary to ascertain the value of each public utility or railroad.”
Reliance is placed by appellants also upon provisions of Section 4909.05, Revised Code, which provides in part as follows :
“The Public Utilities Commission shall prescribe the details of the inventory of the property of each public utility or railroad in the state. Such inventory shall include all the kinds and classes of property, with the value of each, owned by each public utility or railroad used and useful for the service and convenience of the public. In ascertaining such value, the commission may ascertain and report in such detail as it deems necessary as to each piece of property owned or used by such public utility or railroad to show separately the following facts:
“* * * [Then follows a list of the classes of property to. be valued and the method to be used in arriving at such valuation.]
“Such investigations and report shall show separately the property used and useful to such public utility or railroad in the furnishing of the service to the public, and the property held by such public utility or railroad for other purposes, and such other items concerning values and methods of making valuations as the commission deems proper. Such inventories and reports shall be filed in the office of the commission for the information of the Governor and the General Assembly.”
In connection with the foregoing sections, Section 4909.09, Revised Code, is pertinent. It reads as follows:
*115 “When the authority is conferred or the obligation is imposed upon the Public Utilities Commission to ascertain the value of any public utility or railroad, such valuation shall be made in accordance with Sections 4901.01 to 4901.14, inclusive, 4901.17 to 4901.24, inclusive, 4903.10, 4903.12 to 4903.19, inclusive, and 4909.04 to 4909.13, inclusive, of the Revised Code.”
A perusal of the foregoing statutes fails to disclose any obligation of the commission to require a valuation of a railroad’s property as a condition precedent to the fixing of its rate, although it is obvious that the commission may require any information it deems pertinent regarding the value of such property.
There are many statutes in Chapter 4909, Revised Code, which are applicable only to railroads, and the fixing of rates for their services, which are vastly different from corresponding provisions applicable to other public utilities.
The following sections are illustrative of the differences:
Section 4909.22. “When passengers or property are transported over two or more connecting railroads between points in this state, and the railroad companies have made joint rates for the transportation of such passengers or property, such rates and all charges in connection therewith shall be just and reasonable. Every unjust and unreasonable charge is prohibited. A less charge by each of such railroads for its proportion of such joint rates than is made locally between the same points on their respective lines is not for that reason a violation of Chapters 4901, 4903, 4905, 4907, 4909, 4921, 4923, and 4925 of the Revised Code and does not render such railroads liable to any of the penalties in such chapters.”
Section 4909.25. “When complaint is made of more than one rate or charge, the Public Utilities Commission may order separate hearings thereon, and may consider and determine the matters complained of separately, and at such times as it prescribes. No complaint shall necessarily be dismissed because of the absence of direct damage to the complainant.”
Section 4909.26. “Upon an investigation, if the rate, or any regulation, practice, or service of any railroad complained of is found to be unreasonably or unjustly discriminatory, or the service inadequate, the Public Utilities Commission may fix and order substituted therefor, such rate, fare, charge, or *116 classification as it determines is to be just and reasonable, which shall be charged, imposed, and followed in the future. The commission may also make such orders respecting such regulation, practice, or service as it determines is reasonable, which shall be observed and followed in the future, but no rate -fixed shall exceed the maximum rate prescribed by any statute of this state in force at the time the commission fixes such rates.”
Section 4909.27. “If the Public Utilities Commission believes that any rate or charge may be unreasonable or unjustly discriminatory, and that an investigation relating thereto should be made, it may investigate them upon its own motion. Before such investigation it shall present to the railroad a statement in writing setting forth the rate or charge to be investigated. Thereafter, on ten days’ notice to the railroad of the time and place of such investigation, the commission may proceed to investigate such rate or charge in the same manner and make like orders in respect thereto, as if such investigation had been made upon complaint.
• “When any schedule is filed with the commission stating a new individual or joint rate or charge, any new individual or joint classification, or any new individual or joint regulation or practice affecting any rate or charge, the commission may, either upon complaint or upon its own initiative without complaint, at once, and if it so orders, without answer or other formal pleading by the interested carriers, but upon reasonable notice, enter upon a hearing concerning the propriety of such rate, charge, classification, regulation, or practice. Pending such hearing and the decision thereon, the commission upon filing with such schedule and delivering to the carriers affected thereby, a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and postpone the use and operation of such rate, charge, classification, regulation, or practice, for a period of not longer than 120 days beyond the time when such rate, charge, classification, regulation, or practice would otherwise go into effect. After a full hearing, whether completed before or after the rate, charge, classification, regulation, or practice goes into effect, the commission may make such order in reference to such rate, charge, classification, regulation, or practice as would be proper in a proceeding initiated after the rate, charge, classification, regula *117 tion, or practice, had become effective. If any such hearing cannot be concluded within such period of suspension, the commission may extend the time of suspension for a further period not exceeding 30 days. At any hearing involving a rate increased or a rate sought, to be increased, the burden of proof to show that the increased rate or the proposed increased rate is just and reasonable is upon the common carrier, and the commission shall give to the hearing and decision of such question preference over all other questions pending before it and decide the same as speedily as possible.
“A full record shall be kept of the proceedings before the commission on such investigations. All testimony shall be taken by the stenographer appointed by the commission.”
To exemplify the vast difference between the method of fixing railroad rates and that as to other public utilities, we refer to Sections 4909.15 and 4909.18, Revised Code, which are applicable only to “public utilities,” as hereinbefore defined, excluding railroads, and which sections set out the procedure for the fixing of reasonable rates for such public utilities. The pertinent parts of these sections are aS follows:
Section 4909.15. “When the Public Utilities Commission is of the opinion, after hearing, that any rate, fare, charge, toll, rental, schedule, classification, or service, or any joint rate, fare, charge, toll, rental, schedule, classification, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, is, or will be, unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, that the service is, or will be, inadequate, or that the maximum rates, charges, tolls, or rentals chargeable by any such public utility are insufficient to yield reasonable compensation for the service rendered, and are unjust and unreasonable, the commission shall, with due regard among other things, to the value of all property of the public utility actually used and useful for the convenience of the public, # * and with due regard to all such other matters as are proper, according to the facts in each case, fix and determine the just and reasonable rate, fare, charge, toll, rental, or service to be rendered, charged, demanded, exacted, or collected for the performance or rendition of the service, and order such just and reasonable *118 rate, fare, charge, toll, rental, or service to be substituted for the existing one. * * * ”
Section 4909.18. “Any public utility desiring to establish any rate,, joint rate, toll, classification, charge, or rental, or to modify, amend, change, increase, or reduce any existing rate, joint rate, toll, classification, charge, or rental, or any regulation or practice affecting the same, shall file a written application with the Public Utilities Commission. Such application shall be verified by the president or a vice-president and the secretary or treasurer of the applicant. Such application shall contain a schedule of the existing rate, joint rate, toll, classification, charge, or rental, or regulation or practice affecting the same, a schedule of the modification amendment, change, increase, or reduction sought to be established, and a statement of the facts- and grounds upon which such application is based. If such application is not for an increase in any rate, joint rate, toll, classification, charge, or rental, the commission shall permit the filing of the schedule proposed in the application and fix the time when such schedule shall take effect.
“If said application is for an increase in any rate, joint rate, toll, classification, charge, or rental there shall also, unless otherwise ordered by the commission, be filed with the application in duplicate the following exhibits:
“(A) A detailed inventory and appraisal of its property used and useful in rendering the service referred to in such application;
“(B) A complete operating statement of its last fiscal year, showing in detail all its receipts, revenues, and incomes from all sources, all of its operating costs and other expenditures, and any analysis such public utility deems applicable to the matter referred to in said application;
“(C) A statement of the income and expense anticipated under the application filed.”
An- examination of the contrasting statutes with reference to the fixing of rates for railroads and the fixing of rates for public utilities other than railroads demonstrates that, whereas a valuation of the property of such public utilities is required for the fixing of rates, such is not the case with reference to railroads.
Appellants refer to the case of Lindsey v. Public Utilities *119 Commission, 111 Ohio St., 6, 144 N. E., 729, which construed Section 499-8, General Code, now Section 4909.04, Revised Code.
The opinion in the Lindsey case points out that as originally enacted the section provided that the commission “shall investigate and ascertain the value of the property of every public utility or railroad in the state, used and useful for the service and convenience of the public,” and that by amendment in 1915 the word, “shall,” was changed to “may.” The gist of the decision in the Lindsey case is a recognition of this fact, which gave to the Public Utilities Commission a discretion whether it will ascertain and report value in any greater detail than to show the ultimate facts required by the alphabetical subdivisions of Section 499-9, General Code, now Section 4909. 05, Revised Code.
The Lindsey case was a telephone rate case and in it was considered the requirement for valuation of the property as applied to a “public utility,” and no notice was taken or observation made concerning any of the special statutes relative to railroads.
It should also be noted that at the time of the decision in the Lindsey case (June 17,1924) there was no statute requiring a detailed inventory and appraisal of the property of public utilities. Section 614-20, General Code, which is now Section 4909.18, Revised Code, was enacted March 12, 1929 (113 Ohio Laws, 16), and it is interesting to note that as a part of that act, Section 614-20a, General Code, was enacted. This latter section read:
“The term ‘public utility’ as used in this act shall have the meaning and scope given the same by Section 6l4-2a of the General Code.”
Thus, when provision was first made that public utilities in rate cases should file the detailed inventories and appraisals referred to in Section 4909.18, Revised Code, it was applicable only to public utilities as defined in the Code and did not apply to railroads.
The decision of this court in the Toledo Edison case, supra, points out in paragraph two of the syllabus that; “where a question before the Public Utilities Commission is whether a rate of a public utility will yield a reasonable return on the value of the property of the public utility used and useful for *120 the convenience of the public, snch commission is required to ascertain and report snch value, but is not necessarily required to make a detailed inventory.”
Although that case was concerned only with coal freight rates, and there was no issue as to the other rate increases as is presented in the present cases, nevertheless, by reason of the nature of freight rates, the General Assembly has vested in the Public Utilities Commission broad discretion as to the proof which it shall require to establish a new or different rate.
It is a matter of common knowledge that there is intermingling by railroads of property in this state and property in other states; that freight commodities are necessarily commingled so that frequently interstate and intrastate shipments can not be separated. If the evidence produced by the railroads had seemed insufficient to the Public Utilities Commission, it might well have required additional proof. Prom the record as it appears in this court, we agree with the commission that the increases made by the orders of May 1, 1952, and May 7, 1953, were amply justified by the evidence before the commission, and that the order of September 27, 1954, extending the expiration date for such increases to December 31, 1955, was likewise amply justified.
As was held in paragraph four of the syllabus of the Toledo Edison case, “the Public Utilities Commission, so far as intrastate railroad freight rates are concerned, is entirely independent of the Interstate Commerce Commission and is in no way bound by any action of such commission, but the Public Utilities Commission may, in conjunction with the evidence in a case before it, consider relevant and appropriate findings of the Interstate Commerce Commission and the evidence from which such findings were made.”
In view of the law as this court has heretofore declared it, and in view of the evidence in the record,' we hold that the order of the Public Utilities Commission was reasonable and lawful, and, therefore, it is affirmed.

Order affirmed.

Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Taet, JJ., concur.